**BARNES & THORNBURG LLP**
David E. Wood (SBN 121170)
david.wood@btlaw.com
Joshua B. Rosenberg (SBN 294484)
joshua.rosenberg@btlaw.com
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: 310-284-3880
Facsimile:    310-284-3894

Attorneys for Defendant
*CSC Agility Platform, Inc. fka ServiceMesh, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CSC AGILITY PLATFORM, INC. fka SERVICEMESH, INC., a Delaware corporation, COMPUTER SCIENCES CORPORATION, a Nevada corporation, and ERIC PULIER, an individual,<br><br>Defendants.<br>_____<br>CSC AGILITY PLATFORM, INC. fka SERVICEMESH, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,<br><br>Counter-Defendant. | Case No. 2:17-cv-07762-PSG (GJSx)<br><br>Hon. Philip S. Gutierrez<br><br>**DECLARATION OF EVAN ROSENBERG IN SUPPORT OF DEFENDANT CSC AGILITY PLATFORM, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: January 28, 2019<br>Time: 1:30 p.m.<br>Courtroom: 6A |

# DECLARATION OF EVAN ROSENBERG

I, Evan Rosenberg, hereby declare as follows:

1. I have personal knowledge of the facts stated herein. If called as a witness to testify, I could and would competently testify to those facts.

2. I have been retained as an expert witness for defendants CSC Agility Platform, Inc. f/k/a ServiceMesh, Inc. ("ServiceMesh") and Computer Sciences Corporation in connection with this matter.

3. I began my underwriting career at Chubb in 1985 in the Department of Financial Institutions ("DFI"), writing various lines of coverage for banks, insurance companies, stockbrokers, investment banks, venture capital and private equity firms. Policy types included traditional Property/Casualty lines of business (Property, Liability, Auto) in addition to Directors and Officers Liability ("D&O"), Financial Fidelity ("FF") and Professional Liability ("E&O").

4. In 1986 I was promoted to the Chubb home office to focus my underwriting on D&O, FF and E&O for financial institutions, handling larger and more sophisticated accounts. In addition to my referral underwriting responsibilities, I was responsible for product development, endorsement drafting, training junior underwriters and claims liaison activities. I was promoted to Assistant Vice President.

5. In 1991, I left Chubb to work for Marsh and McLennan in San Francisco as Vice President and Western Region Financial Institutions Manager, with responsibility for all D&O, FF and E&O business in the territory. In that capacity I was charged with producing new business and one of the key focus areas was Venture Capital ("VC") and Private Equity firms in Silicon Valley, California. Additionally, I handled accounts such as Bank of America, Charles Schwab, Wells Fargo and Integrated Resources; assessing client needs, soliciting and negotiating insurance quotes with the U.S and Lloyd's markets, and designed and implemented tailored programs for my clients.

6. In 1992 I returned to Chubb's home office as the Assistant Professional

Liability Manager, handling similar duties as noted in item 9 above. During this period, I launched the first product specifically designed for VC firms and Chubb became the market leader in this space.

7. In 1997 I was promoted to Vice President and Worldwide Professional Liability Manager for Department of Financial Institutions. I represented Chubb at industry, broker and client speaking engagements, as well as responding to various news organizations on industry trends and developments.

8. In 2000 I was promoted to Senior Vice President, Worldwide Professional Liability Manager for Executive Protection, our commercial (non-Financial Institution) customer segment. I was responsible for day-to-day operations for our domestic and international business, broker relationships, training and education, product development and evolution, and participated in resolution of complex claims.

9. In 2002, I became Senior Vice president, Global Specialty Lines Product Manager at Chubb, with oversight of DFI, Executive Protection, and Professional Liability segments. I have been heavily involved in the development and execution of our small business strategy including our push into VC and private equity portfolio company growth initiatives.

10. In 2016, I became Executive Vice President and Chief Product Officer at Chubb in charge of underwriting D&O insurance and related lines of coverage. At the time of my retirement in 2018, Chubb was the second largest D&O liability insurer in the United States of America.

11. In connection with my retention in this matter, I have reviewed the questions regarding mergers, acquisitions, and divestments in the Scottsdale and Beazley applications. Specifically, I find no meaningful difference between Question 8 in the Scottsdale application and Question 9 in the Beazley application, both of which ask whether the applicant, a business entity, "contemplate[d]" a merger or acquisition.

12. I have previously worked with application forms for D&O coverage that use the word "contemplate" in asking about prospective mergers or acquisitions.

13. My opinion is that no reasonable D&O underwriter of a technology start-up would interpret an application question asking whether the applicant "contemplate[d]" being merged out or acquired as requiring the company to answer "Yes" if a company executive was simply thinking about whether the company might be purchased. This is because executives at start-ups receive the bulk of their compensation as stock in the company and, unsurprisingly, these executives are constantly thinking about when the company will be purchased so they can cash in on their stock options.

14. Additionally, no reasonable underwriter would expect a technology start-up to disclose communications with partners and potential partners about the subject of acquisition, no matter how often that subject may have arisen.

15. If an underwriter were to ask a technology start-up applying for D&O coverage to disclose if it has ever discussed with another company the prospect of a sale where no offer was ever made, the response would be useless to the underwriter because such an applicant would answer "Yes" nearly every time. Indeed, when underwriting a technology company, especially one involving a VC investment, we assume that informal discussions about mergers and acquisitions are happening all the time.

16. When the Scottsdale underwriter asked whether "the Company" – which can only refer to its Board of Directors – has "contemplated" a merger or acquisition, she reasonably could only have been asking whether ServiceMesh's Board of Directors had considered an offer to buy the company.

17. As an inanimate entity, "the Company" has no mind of its own with which to "contemplate" a merger or acquisition. In asking whether a merger or acquisition was "contemplate[d]" by "the Company" the Application fails to specify who at "the Company" it meant to ask was "contemplate[ing]" a merger or acquisition.

Furthermore, the definition of "Company" in the Policy makes no reference to specific directors, officers or executives at "the Company" whose collective knowledge represents that of "the Company['s]" state of mind.

18. In the context of underwriting a D&O policy for a technology start-up, "contemplating being acquired" is a term we use to mean "actively considering an offer to buy the company." In my opinion, this is the only reasonable interpretation of the phrase. Moreover, whether it is "the Company['s]" Board of Directors or, as Scottsdale contends, the knowledge of "the Company['s]" executives, a technology start-up cannot be "contemplating being acquired" without a term sheet or concrete offer to purchase "the Company" that can be "actively considered."

19. Small start-up companies like ServiceMesh rarely have dedicated risk managers and, therefore, it was foreseeable that questions in its application for insurance by someone who would assume that Scottsdale wanted to know whether the ServiceMesh Board of Directors was considering an offer to buy "the Company." If Scottsdale wanted to know something different, it could have revised its Application and/or Question 8 therein.

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and that this Declaration is executed on November 24, 2018 at Los Angeles, California.

Evan Rosenberg